# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROBERT TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15-cv-00348-JMS-MJD |
| | ) | |
| OFFICER GILBERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Entry on *Pavey* Hearing Rejecting Affirmative Defense of Failure to Exhaust
Available Administrative Remedies**

## I. Background

The plaintiff, Robert Taylor ("Mr. Taylor"), is a federal prisoner incarcerated at the

United States Penitentiary - Terre Haute ("USP – Terre Haute"). He brings this lawsuit under the

theory set forth in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). He alleges

violations of his Eighth Amendment rights. Specifically, he alleges that four officers assaulted

him on November 12, 2014, while he was housed in the Special Housing Unit ("SHU") of the

USP-Terre Haute. The defendants are: 1) Correctional Officer Gilbert; 2) Correctional Officer

Griffen; 3) Correctional Officer Lotz (incorrectly spelled "Lutz" in the complaint); and 4)

Correctional Officer Tarrh.

The defendants asserted the affirmative defense of failure to exhaust administrative

remedies. The defendants' motion for summary judgment on exhaustion was denied on October

13, 2016, but on reconsideration, the Court set the matter for a hearing pursuant to *Pavey v.

Conley*, 544 F.3d 739 (7th Cir. 2008).

The *Pavey* hearing was conducted on May 8, 2017. Mr. Taylor was present and was ably represented by recruited counsel Nancy Menard Riddle and Mary Nold Larimore.[1] Defendant Lotz was present. All defendants appeared by counsel. Documentary evidence was submitted, as well as testimony from Mr. Taylor and from the defendants' witnesses: Melinda Caulton, Mary Noland, James Lotz, Edward Joslyn, and Stuart Williams.

For the reasons explained in this Entry, the Court finds that the defendants did not meet their burden of proof by showing that Mr. Taylor failed to exhaust his available administrative remedies prior to filing this lawsuit.

## II. Discussion

### A.   Legal Standards

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). The statutory exhaustion requirement is that "[n]o action shall be brought with respect to prison conditions…by a prisoner…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to

---

[1] The Court greatly appreciates the efforts of volunteer counsel, Nancy Menard Riddle and Mary Nold Larimore, in vigorously representing Mr. Taylor for purposes of this hearing. Their preparation and presentation were exemplary.

properly exhaust, a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require.") (internal quotation omitted). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

"The PLRA does not [ ] demand the impossible." *Pyles v. Nwaobasi,* 829 F.3d 860, 864 (7th Cir. 2016). "Remedies that are genuinely unavailable or nonexistent need not be exhausted." *Id.* "A remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* (internal quotation omitted). "In such cases, the prisoner is considered to have exhausted his administrative remedies." *Id.*

## B.     Findings of Fact

The following facts have been found by the Court to be true for purposes of the issue of exhaustion based on the testimony and documents presented during the hearing.

The Bureau of Prisons has promulgated an administrative remedy system which appears at 28 C.F.R. § 542.10, *et seq*., BOP Program Statement 1330.18, Administrative Remedy Program, and the Terre Haute Institution Supplement 1330.17B. Exhibits 1, 3, 10.

A federal prisoner must take the following four steps to exhaust his administrative remedies. First, he typically must attempt to resolve the issue informally with the prison's staff. 28 C.F.R. § 542.13; Filing No. 107 (Hearing Transcript. ("Tr.")), at p. 18, line 25 – p. 19, line 17. Second, after trying to resolve his concerns informally, he must submit a written Administrative Remedy Request (BP–9) to the Warden. 28 C.F.R. § 542.14. These first two steps must be performed within 20 days of the incident about which the inmate complaints. *Id*. Third, if his administrative remedy request is denied, he may appeal it to the appropriate Regional Director

by submitting a BP–10 form. 28 C.F.R. § 542.15. And fourth, if the inmate is dissatisfied with the regional director's response, he may appeal that decision to the Central Office - Office of General Counsel (BP–11). *Id.*

As an exception to this four step process, there is a process for "Sensitive Issues." 28 C.F.R. § 542.14(d)(1). "If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director." *Id.* In other words, he does not have to send his administrative request to anyone at the prison where he is confined. If he chooses that route, he "shall clearly mark 'Sensitive' upon the Request and explain, in writing, the reason for not submitting the Request at the institution." *Id.* "If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted." *Id.* "Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request." *Id.*

The BOP Program Statement 1330.18 implementing instructions provide, in relevant part:

> **11 (1) Sensitive Submissions.** Submissions for inmate claims which are too sensitive to be made known at the institution are not to be returned to the inmate. Only a rejection notice will be provided to the inmate. However, other rejected submissions ordinarily will be returned to the inmate with the rejection notice.
>
> \*\*\*
>
> **11 (3) Criteria for Rejection.** When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise. Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or problematic issue, such as medical treatment, sentence computation, or staff misconduct, even though that submission may be somewhat untimely.

BOP Program Statement 1330.18 (Ex. 10).

On November 12, 2014, and during the relevant time period thereafter, the USP – Terre Haute had an administrative remedy system in place. On November 23, 2014, Mr. Taylor submitted an administrative remedy (BP-10) directly to the North Central Regional Office. At the top of the form, Mr. Taylor wrote "Sensitive Complaint" and "Request Internal Investigation." This request was assigned case Remedy No. 803577-R1. Ex. 4.

In the BP-10, Mr. Taylor stated that on November 12, 2014, he "was assaulted, maliciously and sadistically" by the defendants in cell A-110, and that his head, arm and wrist were injured. *Id*. He stated that he also experienced suffocation during the assault when Officer Lotz "placed his gloved hand over [Mr. Taylor's] mouth and nose, to sadistically hinder [Mr. Taylor] from breathing." *Id*. He asserted that the "officers maliciously, sadistically use technique[s] of physical and mental torture against" him. He stated that he was 61 years old. He also alleged that the officers were "racially motivated against this prisoner and 98 percent of all black inmates," and requested "immediate protection from said Officer[]" and that the camera recording be preserved for the date, time and location of the incident. Ex. 4, p. 3.

Mr. Taylor submitted the remedy as a "sensitive" complaint because he was in fear for his life. Tr. at p. 227, lines 1-10. He believed Officer Lotz was trying to kill him, along with Officer Gilbert and the two other officers who were with Lotz. *Id*.

Mr. Taylor is aware of the fact that some of the officers and counselors with whom he interacts have family members that work throughout the Terre Haute prison, and this impacted his decision to request a sensitive remedy from the regional office rather than going to the warden. Tr. at pp. 255-256. For instance, defendant Gilbert's wife works in the lieutenant's office. Tr. at p. 255, lines 24-25 – p. 256, lines 1-22; Tr. at p. 74, lines 23-24; Tr. at 75, lines 10-11. With regard to other employees who might be made aware of a sensitive assault claim at the

institutional level, Mr. Williams, Mr. Taylor's Correctional Counselor, testified that he sometimes reads sensitive remedies filed at the institutional level. Tr. at p. 208, lines 20-25. He further testified that if he received a sensitive BP-9 at the institutional level alleging an officer assaulted an inmate, he would deliver it to the warden's office or administrative clerk and he would also notify the supervisor and the operations lieutenant on the SHU. Tr. at p. 211, lines 1-25 -  p. 212, lines 1-8.

The Regional Office received Mr. Taylor's Sensitive Remedy 803577-R1 on December 5, 2014, and rejected it the same day. Ex. 5. The rejection notice states the reason for the rejection: "The issue you raise is not sensitive. However, we retained your request/appeal according to policy.  You should file a request or appeal at the appropriate level via regular procedures." *Id.*

Mr. Taylor received the rejection of his sensitive remedy sometime around the date it was issued, December 5, 2014. Tr. at p. 282, lines 5-8. He testified that he did not file an appeal to the Central Office because he was in segregation and "no one was giving us BP-8s, BP-9s."  Tr. at p. 287, line 24 – p. 289, line 9.

Deputy Regional Counsel for the North Central Regional Office, Mary Noland, testified as to the practices of the North Central Region when reviewing "sensitive" remedies. When evaluating whether a remedy was, in fact, "sensitive," the practice of the North Central Region was at all relevant times to determine whether the specific allegation of misconduct was alleged against a warden or executive staff members at the institution. Tr. at p. 93, lines 4-15. The  North Central Region interprets the phrase "known at the institution" to mean "known by individuals who were involved in the administrative remedy process," meaning individuals who are at "the executive staff level, the administrative remedy coordinator, or any other types of individuals

that are commonly involved in that remedy process." Tr. at p. 102, lines 2-9. Ms. Noland further testified that "an allegation related to a staff assault…dealing with lower level staff members as opposed to a warden or executive staff members, those would be the type that I would not advise for those to be accepted as sensitive." Tr. at p. 99, lines 1-5.

This criteria or information does not exist in any written policy, written legal advice, or administrative remedy program statement. Tr. at p. 112, lines 9-19. Rather it is "part of the evaluation process that we take as part of the discretion that the administrative remedy coordinator has for accepting administrative remedy submissions as sensitive." Tr. at p. 113, lines 2-6.

### C.    Analysis

It is the burden of the United States to establish that the administrative process was available to Mr. Taylor. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

The Supreme Court in *Ross* identified three different sets of circumstances in which "an administrative remedy although officially on the books, is not capable of use to obtain relief." *Id.* Two of those circumstances are present here.

First, this case exemplifies the "dead end" scenario. "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* "[I]f administrative officials have apparent authority, but decline ever to exercise it," the process is not available. *Id.* Here, the discretion exercised by the North Central Region administrative remedy staff created a "dead end" for all "sensitive" remedies claiming assault inflicted by correctional officers or by other "lower level" prison employees. It is the practice, in fact, of the North Central Region to *not* consider "sensitive" any allegation of correctional officers' assaults on an inmate.

The second type of "unavailable" circumstances is when an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use." *Id.* at 1859. If no "ordinary prisoner can discern or navigate it," *id.,* then the process is unavailable. Here, Mr. Taylor was not made aware of the North Central Region's predetermination that a remedy alleging that four officers assaulted him would not be accepted as "sensitive." Indeed, there is no written or legal restriction to allowing "sensitive" remedies only when the claim runs against an executive staff member. In the North Central Region, however, no prisoner has the means to navigate the sensitive process against a correctional officer who has assaulted him.

The regulation Mr. Taylor attempted to invoke reads: "If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director." 28 C.F.R. § 542.14(d)(1). Nothing in this regulation or applicable program statements narrows the definition of "became known at the institution" to those allegations that directly involved the warden or executive staff members who would be

involved in processing the remedy. If the regulation were intended to be construed in this fashion, it could easily be stated in those terms. In addition, this interpretation of what qualifies as "sensitive" implies that only individuals directly involved in the administrative remedy process itself will ever become aware of an inmate's allegations. The evidence is contrary to that at the institutional level. Mr. Williams testified that he would inform staff other than those in the administrative remedy pipeline.

Moreover, the implementing instructions providing "Criteria for Rejection" of sensitive remedies directs administrative coordinators to "be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise." Ex. 10 (BOP Program Statement 1330.18(11)(3)). The North Central Regional Office's practice is far from being "flexible." Rather, it grafts on additional secret requirements which run contrary to the very purpose of allowing "sensitive" matters to be presented along a different, purportedly safer, path in the administrative remedy process.

Mr. Taylor had a reasonable belief that his safety or well-being would be placed in danger if his complaint became known *at the prison* or by "lower level officers" who had assaulted him. Retaliation is not an unknown or unreasonable fear for an inmate to have of correctional officers, especially those who allegedly beat him. If the institution itself took up the grievance investigation and it was treated the same as any other grievance, the risk is high that the officers who allegedly assaulted Mr. Taylor would be made aware of his complaint. Moreover, in a prison wherein there are a number of relatives, husbands, and wives who work there, it is also not unreasonable for an inmate to fear that word could travel throughout the prison if certain prison staff learned about an inmate alleging assault against one's husband, brother, or other relative.

When "the possibility of some relief" does not exist, "the inmate has no obligation to exhaust the remedy." *Ross,* 136 S. Ct. at 1859 (internal quotation omitted). "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 1858. The Court finds that the defendants have failed to meet their burden of showing that the "sensitive" remedy process at the North Central Region was available to Mr. Taylor to pursue his claim that four correctional officers had assaulted him in his cell. Accordingly, under the circumstances recognized by the Supreme Court in *Ross* and applicable here, "§ 1997e(a) poses no bar." *Id.* at 1860.

### III. Conclusion

For the reasons discussed above, the defendants' defense of failure to exhaust available administrative remedies is **rejected.**

This action shall now proceed to the merits of Mr. Taylor's claims. The Magistrate Judge is requested to set a status conference to direct the further development of this action.

The reason for the appointment of recruited counsel, Ms. Larimore and Ms. Riddle, has concluded. Thus, counsel may file a motion to withdraw, but the Court would welcome their continued representation should they choose not to withdraw.

The clerk shall also **update the docket** to correct the spelling of Officer Lotz' last name.

**IT IS SO ORDERED.**

Date: 8/31/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

ROBERT TAYLOR
04699-054
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE
rachana.fischer@usdoj.gov

Mary Nold Larimore
ICE MILLER LLP
larimore@icemiller.com

Nancy Menard Riddle
ICE MILLER LLP
nancy.riddle@icemiller.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov

Magistrate Judge Mark J. Dinsmore