UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROBERT TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:15-cv-00348-JMS-MJD |
| | ) |
| CHARLES GILBERT Officer, | ) |
| STEVEN GRIFFIN Officer, | ) |
| JAMES LOTZ Officer, | ) |
| CHRISTOPHER TAHRR Officer, | ) |
| | ) |
| Defendants. | ) |

**ENTRY FOLLOWING BENCH TRIAL**

The Court conducted a bench trial in this action on February 11, 2019. The plaintiff, Robert Taylor, was present in person and by stand-by counsel.[1] All four defendants, Officer Charles Gilbert, Officer Steven Griffin, Officer James Lotz, and Officer Christopher Tarrh, were present in person and represented by counsel, Shelese M. Woods and Lara K. Langeneckert. The court reporter was Cathy Jones.

This action was brought under the theory set forth in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). The issue for trial was whether the defendants subjected Mr. Taylor to excessive force on November 12, 2014, in violation of the Eighth Amendment to the United States Constitution.

---

[1] The Court greatly appreciates the capable assistance that volunteer stand-by counsel, John R. Maley of Barnes & Thornburg, LLP, provided to the plaintiff.

## I. Motion for Preliminary Injunction

At the beginning of trial, Mr. Taylor moved for a preliminary injunction against the Bureau of Prisons ("BOP") and all prison officials at the Federal Correctional Complex at Terre Haute ("FCC-TH"). He alleged that he had been housed in administrative segregation and received false conduct reports in retaliation for filing grievances. He also alleged that he was denied access to the law library in violation of the First Amendment, that he did not have all the documents he needed for trial, and that video evidence was not provided to him.

The defendants responded by pointing out that Mr. Taylor had been most recently confined in a Washington D.C. jail, not by the BOP and that any claim of retaliation or other conditions Mr. Taylor alleged in his oral motion fell outside the scope of this lawsuit. The defendants also stated that earlier in the case, Mr. Taylor had been ably represented by counsel who actively conducted discovery and had sent him copies of all documents in the case. More recently, defendants and the Court provided Mr. Taylor with another set of the documents. To the extent Mr. Taylor asserted that he could not identify witnesses, he was given an opportunity but refused to do so during a pretrial conference with the Magistrate Judge and during the final pretrial conference with the undersigned.

The Court denied the motion for preliminary injunction because the trial could only remedy claims that were brought in the complaint relating to the alleged assault in November 2014. *See Mitchell v. Kallas,* 895 F.3d 492, 502-03 (7th Cir. 2018) ("A prisoner may join defendants in the same action only if the claims against each one 'aris[e] out of the same transaction, occurrence, or series of transactions or occurrences ....'") (quoting Rule 20(a)(2)(A)); *see also George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007). The additional conditions Mr. Taylor complained about are not at issue in this case.

Moreover, the Court explained that Mr. Taylor's decision to terminate his relationship with the attorneys who had worked more than 500 hours on his case led to him having to represent himself at trial. The Court simply does not have enough volunteer attorneys to assist every prisoner litigant. *See Wilborn v. Early,* 881 F.3d 998, 1008 (7th Cir. 2018) (district court did not err in failing to find a replacement attorney after first volunteer attorney withdrew). "The help of recruited lawyers is a valuable resource but a limited one." *Id.* "There are limits to what a court must do after deciding to recruit counsel." *Id.* Nonetheless, the Court did attempt to find another attorney to serve as stand-by counsel at trial and Mr. Maley, an experienced litigator and partner with the largest law firm in the state, volunteered. It is the Court's view that it did all it could do to assist Mr. Taylor with presenting his case.

After consideration of the evidence presented during the bench trial, the Court now issues its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).[2]

## II. Findings of Fact

At all relevant times, Mr. Taylor was confined in federal custody in the Special Housing Unit ("SHU") in the United States Penitentiary in Terre Haute, Indiana ("USP-TH"). Mr. Taylor alleged in his complaint, filed on November 4, 2015, that he was assaulted by the four defendants in his cell #110 on A-range on November 12, 2014. Dkt. 1.

While housed at USP-TH, Mr. Taylor was neither a trouble maker nor a serial litigant. He had a general reputation for honesty among the prison staff.

On November 12, 2014, Officers Griffin and Tarrh came to Mr. Taylor's cell with a mentally ill inmate. The officers wanted Mr. Taylor to be the other inmate's cell-mate. Mr. Taylor refused to cuff up because he knew the other inmate was "crazy." Mr. Taylor told the officers that

---

[2] Any finding of fact that is more properly considered a conclusion of law is adopted as such. Similarly, any conclusion of law that is more properly considered a finding of fact is adopted as such.

they were not supposed to give that order because it could cause a hazard to his health and safety. Mr. Taylor believed the other inmate to be Ricky Ward. After Mr. Taylor objected to the potential cell-mate, the two officers left.

Mr. Taylor was then sitting on his bunk when Officers Gilbert and Lotz came to his cell and grabbed him. Mr. Taylor tried to get away from them, resisting as he did so. Officer Gilbert was the first one to put hands on him. He tried to twist Mr. Taylor while he was on the bed to get Mr. Taylor to cuff up. Officer Lotz was working along with Officer Gilbert. The other two officers, Griffin and Tarrh, came into the cell and held Mr. Taylor's legs. Mr. Taylor believes Officer Gilbert kicked and punched him. Mr. Taylor couldn't be sure who punched him because he tried to turn his head to avoid being hit in the face.

Officer Lotz, who weighs over 300 pounds and can bench press over 250 pounds, put his knee and his weight against Mr. Taylor's lower back. Officer Lotz also put his hands on Mr. Taylor's neck so that Mr. Taylor could not breathe, which made Mr. Taylor feel panic. Officer Lotz wore a Gore-Tex glove on one hand which he put around Mr. Taylor's mouth and nose. Officer Lotz' other hand was around Mr. Taylor's neck. During this time, Officers Gilbert and Lotz were calling Mr. Taylor, an African-American, the "n" word and other obscenities. All four defendants are Caucasian males.

Mr. Taylor stopped resisting. The officers put cuffs on his hands behind his back. Mr. Taylor was then thrown or rolled onto the floor. His shoulder was hurt when he landed on the floor. He turned on his stomach because the handcuffs were against his back.

Once he was on the floor, Mr. Taylor laid in submission. He tried to protect his face with his head on the floor. Even after Mr. Taylor was on the floor, Officer Lotz came over and placed

his knee and his body weight against the center of Mr. Taylor's back, again making it difficult to breathe.

Mr. Taylor experienced excruciating pain, bruises to his back, ribs, shoulder, and neck. Mr. Taylor stayed in bed for a couple of days. A nurse brought Mr. Taylor medications to his cell on November 13 and 14, 2014, but there is no record that he asked for any medical treatment at those times.

He continued to experience pain during that time, and to this day, he suffers from pain in his spine that he attributes to the assault. He believes the assault exacerbated a back condition he had before November 2014, although no medical evidence was submitted to support his belief. He also experiences fear and anxiety as a result of the assault. Mr. Taylor estimates that the assault took place sometime during the evening, around 4:00 p.m., before dinner trays were brought. There was no clock in Mr. Taylor's cell so he cannot say exactly what time it was. The entire incident lasted about 5 minutes.

On November 23, 2014, Mr. Taylor submitted a "sensitive" grievance requesting an internal investigation on a Regional Administrative Remedy Appeal form. Ex. 200. In that grievance, Mr. Taylor alleged that at around 4:00 pm on November 12, 2014, Officers Gilbert, "Griffen," Lotz, and Tarrh assaulted him in his cell, injuring his head, arm, and wrist, and causing suffocation. *Id.* He stated that "Officer Lotz placed his glove[d] hand over prisoner['s] mouth and nose to sadistically hinder prisoner from breathing." *Id.* Mr. Taylor stated that he was a "61-year-old prisoner" at the time. *Id.* The grievance was stamped received on December 5, 2014. *Id.*

On page 3 of the grievance, Mr. Taylor requested that the "camera recording be preserved regarding the fore-said date and time location of incident." *Id.* No video recording was preserved. No search for the video was conducted as a result of the request in the grievance. Digital video 24-

hour recording in the prison is stored with the oldest video being overwritten in a 12-14 day loop. There are at least two cameras on each range, one facing down from the entry point and one facing back from the back of the range.

Officer Gilbert "vaguely" knew Mr. Taylor from working on the SHU. Officer Gilbert was SHU Officer Number 1 on November 12, 2014. He denies encountering Mr. Taylor that day, and though he did not recall going into his cell with the other defendants, he denies the use of force against Mr. Taylor at any time. Officer Gilbert denies seeing Officers Tarrh, Griffin, or Lotz use force against Mr. Taylor in the SHU. Officer Gilbert never had difficulties with Mr. Taylor and Mr. Taylor never made any false statements to him.

Officer Griffin knew Mr. Taylor from working on the SHU. He most likely encountered Mr. Taylor on November 12, 2014, but has no recollection of being in Mr. Taylor's cell that day. Officer Griffin was SHU Officer Number 3 that day. He denies using any force against Mr. Taylor at any time. Mr. Taylor never made any false statements to Officer Griffin and he never had difficulties with Mr. Taylor. Officer Griffin remembers Mr. Taylor refusing a cell-mate in the past, but nothing that required force. Officer Griffin denies ever seeing the other three officers use force against Mr. Taylor.

Officer Tarrh was the Recreation Officer in the SHU on November 12, 2014. He might have encountered Mr. Taylor at some point on November 12, 2014, but he has no recollection of being in his cell that day. Officer Tarrh denies using any force against Mr. Taylor and denies ever seeing Officers Griffin, Gilbert, or Lotz use force on Mr. Taylor.

Officer Lotz knew Mr. Taylor from working on the SHU but he does not recall having any interaction with him on November 12, 2014. Officer Lotz denies ever laying a hand on Mr. Taylor. He also denies seeing the other three officers use force against Mr. Taylor.

"Count" was conducted at approximately 4:00 pm each day. At that time, all inmates were required to stand and be counted. There would usually be no inmate movement or cell transfers during count. Sometimes, though, prisoners were moved during count. On November 12, 2014, count cleared at 4:34 pm. Ex. 205.

There is a policy at FCC-TH to report any use of force on the SHU. If an officer was involved in a use of force with an inmate, it was SHU policy for the officer to write a memo to the lieutenant about what happened. The incident would then be entered into the Truscope program. No written report of use of force against Mr. Taylor was submitted on November 12, 2014. Ex. 207.

### III. Conclusions of Law and Analysis

"In a bench trial, a district court judge must act as both gatekeeper and fact finder." *Madden v. United States Dept of Veterans Affairs,* 873 F.3d 971, 973 (7th Cir. 2017). As a jury can, the Court may draw reasonable inferences from the evidence and must assess the credibility of witnesses.

In summary, the Court credits Mr. Taylor's testimony that the officers used force against him in his cell on November 12, 2014. To restate the material facts from Part II, the Court finds that Mr. Taylor has proven by a preponderance of the evidence that during the late afternoon of November 12, 2014, Officers Griffin and Tarrh brought another inmate to Mr. Taylor's cell. Mr. Taylor objected to being housed with the other inmate. Those officers left but soon thereafter returned with Officers Gilbert and Lotz. They ordered Mr. Taylor to cuff up and Mr. Taylor resisted. The officers tried to subdue Mr. Taylor and force was used in doing so. Once they restrained his arms behind his back, the officers threw him (or he rolled) onto the floor. He laid

there in submission, no longer resisting. After Mr. Taylor was on the floor, Officer Lotz continued to use force against him.

The Court bases its credibility determinations on Mr. Taylor's demeanor at trial, the contents and timeliness of the "sensitive" grievance he submitted days after the assault, his request for video of the incident, his consistent descriptions of the officers' conduct, the lack of evidence that Mr. Taylor had any personal animosity toward the officers or had any prior problems with them or any other officers, the fact that Mr. Taylor had no history of fabricating stories and is not a frequent litigator, and the BOP's failure to appropriately respond to his request to preserve video evidence.

"Correctional officers violate the Eighth Amendment when they use force not 'in a good faith effort to maintain or restore discipline,' but 'maliciously and sadistically for the very purpose of causing harm.'" *Wilborn*, 881 F.3d at 1006 (quoting *Hudson v. McMillian,* 503 U.S. 1, 6 (1992)) (affirming judgment in favor of defendant officers who "used only the force needed to restrain [plaintiff] and restore safety."). "[T]he key inquiry in an excessive-force case is the amount of force used, not the degree of harm that was inflicted on the victim." *White v. Hefel*, 875 F.3d 350, 358 (7th Cir. 2017). "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated....This is true whether or not significant injury is evident.'" *Id.* (quoting *Hudson,* 503 U.S. at 9).

"Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Forrest v. Prine*, 620 F.3d 739, 744–45 (7th Cir. 2010) (internal quotation omitted) (where large inmate confined in small cell was aggressive, disruptive, and

posing a physical threat, the jail officers' use of a taser to maintain safety and order was not excessive force); *see also Guitron v. Paul,* 675 F.3d 1044, 1046 (7th Cir. 2012) (affirming modest use of force as constitutional if inmate disobeys command that is designed to maintain order in the prison).

In applying the relevant factors, the Court must determine whether Mr. Taylor posed any threat or other justification for the use of force. Mr. Taylor initially resisted being cuffed up, so the use of minimal force to restore and maintain discipline was justified for as long as he resisted. Once Mr. Taylor submitted, however, there could be no reasonable perception that he posed any threat to maintaining safety or discipline and therefore there was no justification for force. There were four guards who were younger and stronger than Mr. Taylor. And as noted, Officer Lotz is a very large, very strong man.

The Court does not credit the defendants' contention that the incident simply did not happen. More specifically, the Court places no weight on the defendants' evidence that there is no movement of inmates at 4:00 pm during the "count." Mr. Taylor has never insisted that the assault occurred at precisely 4:00 pm, or at any other specific time for that matter. It is undisputed that all four defendants were working on Mr. Taylor's range in the SHU on November 12, 2014.

The Court acknowledges that some evidence weighs against some details in Mr. Taylor's version of events. The inmate Mr. Taylor believed was brought to his cell, Ricky Ward, No. 45818-074, (even though there were several Ricky Wards in the BOP), was never housed at FCC-TH. Ex. 1. This minor detail, however, does not dissuade the Court from believing Mr. Taylor.

In addition, the lack of written Incident Reports does not cut against Mr. Taylor's credibility. Whether an Incident Report is written is entirely within the control of the officers applying force. The Incident Reports and memos that were admitted into evidence reflected

incidents in which an inmate was defying an order and/or assaulting an officer with a handmade weapon, circumstances that were not presented by Mr. Taylor.

As noted, the overall lack of institutional evidence of the incident was exacerbated by the BOP's treatment of Mr. Taylor's sensitive grievance. The BOP failed to preserve the requested video evidence. The defendants argued that the grievance, signed on November 23, 2014, was not received until December 5, 2014, 23 days after the incident, but even then, there is no evidence that any search for the video evidence was conducted at that time or any time in 2014 or 2015. Although video evidence would not show exactly what happened in Mr. Taylor's cell that day, it would at a minimum show the range and the four officers entering the cell, which the defendants dispute happened.

### *Officers Griffin and Tarrh*

When the officers first came into his cell, Mr. Taylor resisted their efforts to put him in restraints. He tried to get away from them. He conceded that Officers Griffin and Tarrh only held his legs and did not hurt him. On this basis, the Court finds that Officers Griffin and Tarrh did not use constitutionally excessive force against Mr. Taylor. In addition, having considered a possible claim that these officers failed to intervene to protect Mr. Taylor, the Court finds that there is insufficient evidence as to where these officers were and what they could have reasonably done to prevent the relatively quick assault. *See Wilborn,* 881 F.3d at 1007 ("An officer who fails to intervene to try to prevent known cruel or unusual force, despite a reasonable opportunity to do so, may be held liable…." *Fillmore v. Page,* 358 F.3d 496, 505-06 (7th Cir. 2004) (same). "[T]he mere presence" of officers "without more falls short of a deliberate or reckless disregard of [an inmate's] constitutional rights." *Id.* at 506.

*Officer Gilbert*

Mr. Taylor believes that Officer Gilbert kicked and punched him, but his testimony about this force was less decisive because rather than focusing on who was doing what, Mr. Taylor was trying to cover his face for protection. In addition, the force used by Officer Gilbert occurred while Mr. Taylor was resisting being cuffed up. Mr. Taylor has failed to meet his burden of proof that Officer Gilbert used more force than what was required to subdue Mr. Taylor. Therefore, the Court finds in favor of Officer Gilbert.

*Officer Lotz*

Mr. Taylor recalls in vivid detail that when Officer Lotz entered the cell, he put his knee against Mr. Taylor's back, grabbed his neck, and put one gloved hand over his mouth and nose, cutting off his air supply. This is consistent with what Mr. Taylor wrote in the grievance he signed 11 days after the incident. After Mr. Taylor was on the ground, Officer Lotz again placed his knee and his weight against Mr. Taylor's back. Even at the point when Mr. Taylor was trying to avoid being handcuffed, a 300-pound officer wrapping his hands around a much older and smaller inmate's neck, temporarily suffocating him by placing his hand over his mouth and nose, and putting his knee and weight against the inmate's back, was not in a good faith effort to maintain or restore discipline, but instead was done maliciously and sadistically.

Accordingly, the Court finds in favor of Mr. Taylor on his claim of excessive force against Officer Lotz.

The Court finds against Mr. Taylor and in favor of Officers Gilbert, Griffin, and Tarrh on the claims of excessive force and/or failure to intervene brought against them.

## IV. Remedies

Mr. Taylor is awarded $2,000.00 in compensatory damages for the physical injury, pain, anxiety, and trauma inflicted by Officer James Lotz.

## V. Conclusion

The Court summarizes its findings as follows:

Judgment is entered **in favor of Mr. Robert Taylor and against Officer James Lotz**, in the amount of $2,000.00 in compensatory damages.

Judgment is entered **in favor of defendant Officers Charles Gilbert, Steven Griffin, and Christopher Tarrh.** Mr. Taylor is awarded no damages as to the claims against these defendants.

The **clerk is directed** to **update the spelling** of defendant "Christopher Tarrh's" name on the docket.

The **clerk is directed** to **update Mr. Taylor's address on the docket,** as indicated in the distribution list on this Entry.

**IT IS SO ORDERED.**

Date: 3/28/2019

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

ROBERT TAYLOR
DC #258926
D.C. Department of Corrections
1901 D Street SE
Washington, DC  20003

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE
rachana.fischer@usdoj.gov

Lara K. Langeneckert
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lara.langeneckert@usdoj.gov

John R. Maley
BARNES & THORNBURG, LLP (Indianapolis)
jmaley@btlaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov